IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVE WINGATE,                          §
On Behalf of Himself                   §
and All other similarly situated       §
                                       §      CASE NO.
                   Plaintiffs,         §
                                       §      CLASS ACTION COMPLAINT
v.                                     §
                                       §      JURY TRIAL DEMANDED
BARKMAN HONEY LLC,                     §
a Domestic Corporation, TRUE SOURCE    §
HONEY, LLC, a Foreign Corporation      §
                                       §
                   Defendants.         §

## CLASS ACTION COMPLAINT

Plaintiff, Dave Wingate, ("Plaintiff" or "Wingate"), by and through his undersigned counsel, on behalf of himself and all other persons and entities similarly situated, alleges against defendant Barkman Honey LLC, ("Barkman") and True Source Honey, LLC ("True Source"), (collectively, "Defendants") the following facts and claims upon knowledge as to matters relating to himself and upon information and belief as to all other matters and, by way of this Class Action Complaint, avers as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      This is a proposed Class Action brought by Plaintiff on behalf of himself and other consumers who purchased honey products from Barkman that are labeled Naked Wild Great Lakes Raw Honey ("Raw Honey") and described as "Raw and Unfiltered" on its website, and as "100% Pure Raw Honey" on its label.

2.      Suit is also brought against True Source for permitting Barkman to use the "True Source Certified" label to mislead consumers into believing that the Barkman honey is as labeled.

3.      Unknown to Plaintiff and the Class, the Raw Honey sold by Barkman is not, in fact, raw. Barkman heats its honey to a temperature greater than 105 degrees Fahrenheit when it bottles its honey, because heated honey is easier to bottle and package.

4.      Unfortunately, when raw honey is heated to more than 105 degrees, the enzymes in the honey that are prized by consumers become denatured. That is to say, they begin to break down and are lost.

5.      The testing protocol that True Source claims its packer members (like Barkman) must comply with would have revealed that the honey was not raw. That it did not is evident that the True Source certification is false.

6.      Because Barkman's Raw Honey is not raw, the descriptions on its labels and its website are inaccurate and incorrect. Moreover, the use of True Source's certification is false and misleading, as Barkman does not comply with its obligations to be True Source certified and True Source failed to ensure compliance by Barkman.

THE PARTIES

7.      Plaintiff Dave Wingate ("Wingate") is a natural person and citizen of Long Grove, Illinois. Plaintiff does his own grocery shopping.

8.      Defendant, Barkman Honey LLC, is a Delaware Corporation with its principal place of business located at either 7075 West 37th Street North, Suite A, Wichita, Kansas  or at 120 Santa Fe Street, Hillsboro, Kansas.

9.      At all relevant times, Barkman transacted and conducted business in Kansas and throughout the United States.

10.     True Source is a foreign corporation with its principal offices located at 1 Massachusetts Avenue NW, Suite 800, Washington D.C. It is a trade organization formed by certain members of the honey industry for the stated purpose of giving consumers and other members of the industry assurances that honey bearing the True Source Certified label has been sourced from an identified country, has not been adulterated, is pure, and that the labeling is accurate.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is minimal diversity (Plaintiff seeks to represent a national class of consumers, many of whom are not citizens of Kansas, including named Plaintiff Wingate, a citizen of Illinois, and Defendant is domiciled in Kansas and incorporated in Delaware), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

12.     Venue lies in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Barkman does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

## SUMMARY OF THE CASE

13.     This case concerns Barkman's mislabeling of its premium product: "Naked Wild Great Lakes Raw and Unfiltered Honey." Barkman fails to disclose to purchasers of its honey products that the honey is not actually raw. In furtherance of its mislabeling, it represents that its

honey has been certified by True Source and that it is therefore accurately described as raw honey

14.     Most or all of the enzymes in Raw Honey are lost when it is heated to a temperature of 105 degrees Fahrenheit or more over a period of time.

15.     Barkman purchases honey from a variety of sources. These sources ship the honey to Barkman in large drums. In order to process and package its honey, Barkman heats it. On its website, Barkman claims that its Raw Honey is not heated to the point that the enzymes are destroyed: "It's warmed just enough to liquefy the honey crystals while retaining natural enzymes, flavor and aroma. Raw honey generally can be defined as honey obtained by minimal processing."

16.     This assertion is untrue. Honey that has been heated to a high enough temperature that the enzymes in raw honey break down has an elevated 5-hydroxymethylfurfural (HMF) value. In fact, the scientific community has long understood that HMF values over 40 are strong evidence that honey has been heated enough to break down the enzymes contained in the honey.

17.     The international standard promulgated by Codex Alimentarius for honey has set the maximum limit of HMF in honey at 40 mg/kg to ensure that the product has not undergone extensive heating. The Codex Alimentarius is recognized by the World Trade Organization as an international reference standard for the resolution of disputes concerning food safety and consumer protection.

18.     The sample of Barkman's Raw Honey recently purchased by Mr. Wingate from a store near his home in Long Grove had a tested HMF value of 147, almost 4 times the threshold of 40 for table honey.

19.     The elevated HMF value for Plaintiff's bottle of Barkman's Raw Honey is not an aberration. Additional samples of Barkman's Raw Honey have been tested and all demonstrated values of more than 40.

4

20.     Despite the fact that its Raw Honey is not in fact raw, Barkman advertises on the internet and labels its Raw Honey as "100% Pure and Raw Honey." This is simply false and misleading. Moreover, Barkman represents on its label that its honey has been True Source Certified, even though that certification is false.

21.     Barkman either knew or recklessly failed to know that its labeling the Raw Honey as  "100% Pure Raw Honey" was incorrect and misleading, and despite this knowledge, Barkman continues to sell its Raw Honey at prices it could not hope to receive for processed honey; that is, honey that is not 100% raw because it has admittedly been heated. For its part, True Source either knew or should have known that its certification of Barkman's raw honey is false

22.     At all relevant times, Barkman either knew or should have known and was reckless in not knowing that its Raw Honey was heated to the point of being cooked, thereby destroying the enzymes that people seek out and expect from Raw Honey. Barkman knew its Raw Honey was mislabeled and that it did not have the health benefits implicitly advertised in its Raw Honey; in spite of this, Barkman took no action to: (1) inform purchasers of the defects in its Raw Honey; or (2) recall its mismarked Raw Honey. Barkman concealed this knowledge from the Class.

23.     At all relevant times, Barkman knew, or should have known, the Raw Honey was (a) defective; (b) would not have the perceived benefits of Raw Honey; and (c) the defect, if known, would have failed to meet the reasonable expectations of consumers, and would not have been, or would not be, sold at the premium price Barkman charges for its Raw Honey.

24.     Barkman knew, or reasonably should have known, prior to sale to Plaintiff and the Class, that the Raw Honey it offered for sale as raw was not in fact raw and did not contain all of the enzymes found in raw honey.

25.     True Source knew or should have known that its certification of Barkman honey

5

was false.

26.     Barkman's conduct and True Source's conduct, whether committed intentionally or by negligence, thereby deprived consumers such as Plaintiff and the proposed Class of the opportunity to negotiate or pay a lower price to reflect the diminished value of the Raw Honey, or simply avoid buying Barkman's Raw Honey altogether.

27.     Consumers, like Plaintiff and the proposed Class, have reasonable expectations that:

> a.     a honey processor's products or marketing such as Barkman would accurately describe their product on their label so that consumers could make their honey purchases based upon accurate information on the label; and/or,

> b.     a honey company processing, producing or marketing, such as  Barkman, would only sell honey described as 100% raw if it had the perceived physical properties that are associated with raw honey.

## BARKMAN'S CONDUCT WITH RESPECT TO ITS DECISION TO COOK THE HONEY AT ISSUE

28.     Barkman has been aware, or but for its negligence or reckless indifference would have known, that its Raw Honey was no longer raw honey after it was cooked for processing.

29.     Barkman knew (or but for its negligence or reckless indifference would have known) that it or its distribution channels were receiving, and did receive, honey that had been heated to such a temperature that it ceased to have those properties for which Plaintiff and the proposed Class of consumers buy raw honey. Barkman also knew, or should have known, that even if diligently examined or inspected, consumers would not: (a) be capable of determining that Barkman's Raw Honey did not have the properties of raw honey; and, (b) be able to determine the cause of the problems with the Raw Honey.

30.     Thus, Barkman knew (or but for its negligence or reckless indifference would have

known) that for the foreseeable future: (a) it was selling honey identified as 100% raw that was not raw; (b) Barkman's customers such as Plaintiff and the proposed Class were not aware that they were buying honey that was not 100% raw honey; and (c) those customers had a reasonable expectation that Barkman would accurately describe its Honey product on its label.

31.     Despite such knowledge, or as a result of its negligence or reckless indifference, Barkman did not disclose to the market such as Plaintiff or the proposed Class that it was selling cooked honey and that its cooked honey—falsely described as 100% Raw on its label—did not have the chemical properties that Barkman and the market attribute to 100% Raw Honey. At all relevant times, Barkman had knowledge that the Honey was defective but took no action to: (1) inform purchasers such as Plaintiff and the proposed Class about the Honey or the defects; or (2) recall the Honey. Instead, Barkman concealed this knowledge from Plaintiff and the proposed Class.

32.     At all relevant times, Barkman knew its 100% Raw Honey was both defective and mismarked, but chose to conceal, suppress, or omit these material facts while distributing, marketing, and selling its Honey to unsuspecting consumers in Illinois, Kansas and throughout the United States.

## PLAINTIFF WINGATE'S EXPERIENCE

33.     Plaintiff Wingate purchased Barkman's 100% Raw Honey in the fall of 2018, at his local Jewel Osco.

34.     Unknown to Plaintiff, the Honey was mislabeled and defective in that it was improperly described as "100% Raw Honey," even though it had been heated to such a degree that the physical properties recognized and promoted by honey industry proponents in raw honey were cooked away.

35.     Relying on the efficacy of Barkman's labeling information, Plaintiff purchased a bottle of Barkman's 100% Raw Honey. Plaintiff had no way of knowing or even of discovering that the Honey was mismarked and defective.

36.     Barkman charges a premium for its 100% Raw Honey that is substantially more than other companies charge for their processed honey products, that is honey that is less than 100% raw.

## TRUE SOURCE'S CONDUCT WITH RESPECT TO ITS CERTIFICATION

37.     True Source holds itself out as an industry watchdog group created and maintained by certain members of the honey industry to promote voluntary compliance with: only buying honey from vetted sources, only shipping honey that has been tested for purity, authenticity of the identified source, lack of adulteration and so forth.

38.     True Source's stated purpose for existing is as follows:

"**We pledge** to adhere to the standards of True Source Certification. We pledge to protect our customers and consumers, as well as the global reputation of honey products, by ensuring to our utmost ability that honey:

- Is ethically sourced in a transparent and traceable manner from known beekeepers and brokers;
- Moves through the supply chain in full accordance with U.S. law and without circumvention of trade duties; and
- Carries truthful labeling as to its source, has been tested to ensure quality, and has been handled in a safe and secure manner from hive to table.

We endeavor to do business with companies that share our concern for food safety and security. We pledge to stand against the collection, processing or sale of adulterated honey or honey that has been obtained in circumvention of U.S. law. We espouse a global standard for high-quality honey that does not allow for adulteration with added syrups or other sweetener extenders, or use of inappropriate additives in honey production."

39.     For honey packers such as Barkman, these requirements for initial and continued membership and the right to label its honey as True Source Certified, include the following:

"If you're a Honey Company/Packer:

- Become True Source Certified! Find out more <u>here</u>. True Source Honey, LLC, has developed the True Source Certified voluntary system of origin traceability for companies that wish to demonstrate through an independent third-party audit firm that their sourcing practices of honey are in full compliance with U.S. and international trade laws.

- Follow the tips listed in this <u>quick reference guide</u> to guard against buying Chinese transshipped honey.

- Ask the importer for a copy of <u>customs form 3461</u> to determine the country of origin declared to U.S. customs and to confirm that the H.S. code is 0409.00.00.

- To report suspicious offers/honey shipments, go to the <u>allegations page</u> of U.S. Customs and Border Protection. The report can be anonymous."

40.    In particular, honey packers must constantly submit their honey for testing by a third party lab as follows:

"3.1.3.8 Maintain a system to ensure honey purity (freedom from economic adulteration) to protect consumers from fraud. a. Packers will maintain a system to analyze honey purity and demonstrate the system implementation. b. AOAC 998.12 C4 Plant Sugars in Honey or equivalent methodology validated against 998.12 using duplicate samples. c. If evidence of sufficient purity testing is not available, samples obtained for origin analysis may also be subject to analysis for purity."

41.    Barkman has knowingly or negligently failed to have proper testing performed to prevent cooked honey from being packaged and sold.

42.    True Source has knowingly or negligently failed to monitor its member Barkman for compliance with its True Source requirement that it maintain a system that will prevent honey from being sold by Barkman that is not adulterated.

## <u>COMMMON FACTUAL ALLEGATIONS</u>

43.    Upon information and belief, Barkman has sold, directly or indirectly (through grocery stores, health food stores, specialty retailers and other retail outlets), thousands of bottles of 100% Raw Honey in Kansas, Illinois and across the United States.

44.    Barkman represented that each bottle of 100% Raw Honey conformed to the

generally understood definition of raw, that is, with an HMF value of 40 or less. Backman also represented that its honey was True Source Certified, when in fact it did not meet the requirements for True Source Certification.

45.    These representations became part of the basis of the bargain when Plaintiff and Class Members purchased the Barkman product marked 100% Raw Honey.

46.    Plaintiff and Class Members relied on Barkman's representations on the Honey bottles' labels and on Barkman's website and accepted such representations as being true.

47.    However, the Honey does not conform to these express representations and, as alleged herein, Barkman breached its express representations concerning its Raw Honey.

48.    The defects and deficiencies in the Honey are due to Barkman's decision to heat the honey to make processing and bottling easier.

49.    Despite knowing of the defects in its Raw Honey, Barkman has not notified all consumers, purchasers or retailers of the defects nor provided uniform relief.

50.    Plaintiff and the proposed Class Members have not received the value for which they bargained when the Raw Honey was purchased by them. There is a difference in value between the Raw Honey as labeled and advertised and the honey as it actually exists.

## CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

> All persons and entities in the United States who made retail purchases of Barkman's 100% Raw Honey products during the applicable limitations period.

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Barkman and any entity in which Barkman has a controlling interest or which

has a controlling interest in Barkman and its legal representatives, assigns and successors of Barkman; and (c) all persons who properly execute and file a timely request for exclusion from the proposed Class.

52.     *Numerosity*: The Class is composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical.

53.     *Commonality*: Questions of law and fact common to the Class exist as to all proposed members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

a.     Whether the 100% Raw Honey is mislabeled;

b.     Whether the 100% Raw Honey labels are misleading;

c.     Whether Barkman's 100% Raw Honey is not in fact raw;

d.     Whether Barkman knew or should have known of the defects;

e.     Whether Barkman's labels are misleading;

f.     Whether Barkman concealed from consumers and/or failed to disclose to consumers the defects;

g.     Whether Plaintiff and the proposed Class members are entitled to compensatory damages, including, among other things: (i) compensation for all monies paid by members of the Class for Barkman's Raw Honey; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Raw Honey as advertised and the Raw Honey as it really is;

h.     Whether Plaintiff and the proposed Class members are entitled to restitution and/or disgorgement;

i.     Whether Barkman falsely advertised and marketed its Raw Honey products to consumers;

j.     Whether the Raw Honey conforms to the applicable industry standards;

k.      Whether Barkman concealed the defective nature of the Raw Honey;

l.      Whether Barkman's conduct as alleged is misleading deceptive and/or unconscionable; and

m.      Whether True Source negligently or recklessly allowed its certification to go on Barkman's product labels even though it did not meet articulated standards for True Source certification.

54.     *Typicality*: Plaintiff's claims are typical of the claims of the proposed members of the Class, as all such claims arise out of Barkman's conduct in heating, packaging and bottling its Raw Honey product as well as its marketing, advertising, warranting and selling the defective Honey. Barkman's conduct in concealing the defects in the Raw Honey, True Source's failure to enforce the requirements for its certification program with respect to Barkman honey, and Plaintiff's and the proposed Class Members' purchases of the defective Honey.

55.     *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving mislabeling, product liability and product design defects.

56      *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout Kansas, Illinois and the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this

class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

**COUNT I**

**NEGLIGENCE AGAINST BARKMAN**

57.     Plaintiff on behalf of himself and all others similarly situated adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

58.     At all times material hereto, Barkman purchased, processed, packaged and sold honey labeled as 100% Raw Honey.

59.     Barkman had a duty to Plaintiff and to members of the class to process the honey so that it was not heated to the point that the physical properties of raw honey recognized in the honey industry and by consumers were lost.

60.     Barkman had a duty to Plaintiff and to members of the class to test the Raw Honey to ensure that it retained the properties of 100% raw honey.

61.     Barkman had a duty to Plaintiff and to class members to ensure that the Honey was as properly labeled and suitable to such labeling, either by properly testing or by verifying third-party test results of such Honey.

62.     Barkman failed to exercise ordinary and reasonable care in the processing and bottling of the Raw Honey and in determining whether the Raw Honey that it sold and continues to sell was defective, resulting in the failure of the Raw Honey to perform as reasonably expected by consumers.

63.     Barkman breached its duty to the Plaintiff and the proposed Class to test the Raw Honey to ensure adequate performance of the Raw Honey.

64.     Barkman breached its duty to Plaintiff and to the Class to ensure that the Raw

Honey was suitable, either by properly testing or by verifying third-party test results for such Honey.

65.    Barkman breached its duty to Plaintiff and to the Class to ensure that the Raw Honey complied with accepted industry standards for 100% raw honey.

66.    The negligence of Barkman, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

   a.    processing, distributing, delivering, supplying, inspecting, marketing and/or selling Raw Honey without adequately and thoroughly testing it for conformance to industry standards for 100% raw honey;

   b.    negligently failing to ensure that the Raw Honey conformed to all applicable industry and consumer standards; and

   c.    concealing information concerning the defects inherent in the Raw Honey from Plaintiff and the Class members, while knowing that Barkman's Raw Honey was defective and non-conforming with accepted industry standards.

67.    Plaintiff and the Class have been damaged because the defective 100% Raw Honey is not 100% raw honey, and does not contain the materials that make raw honey such a healthy food for people, as recognized and promoted by the honey industry.

68.    Plaintiff and the Class have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Barkman as aforesaid.

69.    To the extent that Barkman's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent or the like, Plaintiff and the Class are entitled to an award of punitive damages against Barkman.

## COUNT II

## NEGLIGENCE AGAINST TRUE SOURCE

70.    Plaintiff repeats and realleges the allegations of paragraphs 1-69 as though fully set

forth herein.

71.     True Source voluntarily assumed its role as the watchdog of the honey industry.

72.     By voluntarily assuming this role and holding itself out to the honey industry and the public, it assumed the duty to police its members to assure compliance with its requirements so that consumers such as the Plaintiff could rely on the True Source Certified verification as being truthful, accurate and its members compliant with the particular terms of their membership.

73.     In the case of Barkman, a Packer as that term is used by True Source, that required True Source assure compliance by Barkman by requiring that Barkman have a testing protocol in place doing sufficient testing that adulterated honey would be discovered and not sold to the consuming public. True Source failed to monitor its member Barkman for compliance with its testing requirements.

## COUNT III

## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACTKSA. §50-623 TO -644

74.     Plaintiff, on behalf of himself and the Class, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

75.     The conduct described above and throughout this Complaint was committed by a Kansas corporation and constitutes a deceptive act in connection with a consumer transaction. Kansas Consumer Protection Act ("KCPA"), K.S.A. §50-623 to 50-644.

76.     This applies to the claims of Plaintiffs and all Class members because the conduct which constitutes violations of the KCPA by the Defendant occurred within the State of Kansas and was committed by a Kansas company.

77.     The KCPA prohibits unfair and deceptive acts or practices, including among other things: "(1) Representations made knowingly or with reason to know that: (A) Property or services

have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have."

78.     Barkman engaged in the concealment, deception, suppression, or omission of material facts in violation of the KCPA when, in selling and advertising the Barkman 100% Raw Honey, Barkman knew that the Honey was not in fact 100% raw, and that it had been stripped of all or many of its physical properties recognized by the honey industry and its consumers.

79.     Barkman engaged in false, misleading and deceptive acts when it misrepresented the nature and purity of its Honey as well as its claim that it tested its Honey constantly to ensure that its claims were accurate, with the intent that others, such as Plaintiff and the Class, would rely upon, if true, the deception and misrepresentations of material facts and purchase Barkman's 100% Raw Honey.

80.     True Source engaged in false, deceptive acts when it allowed Barkman to label its products True Source Certified when it knew or should have known that Barkman's testing protocol did not meet the standards of True Source.

81.     Plaintiff and the Class would not have purchased the Raw Honey, or would not have paid the elevated price of 100% Raw Honey, had they known or become informed of the material defects in the Honey.

82.     Barkman's deception and misrepresentation or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the KCPA.

83.     Barkman has acted unfairly and deceptively by misrepresenting the nature and quality of the Raw Honey.

84.     Barkman either knew, or should have known, that the Honey was defectively

16

processed, packaged and labeled when the Honey was heated to temperatures above 105 degrees, such that the Honey was not as advertised or described.

85.     Upon information and belief, Barkman knew that, at the time the Raw Honey left Barkman's control, the Honey was defective as described herein. At the time of sale, the Honey was defective as described.

86.     As a direct and proximate cause of the violation of the KCPA described above, Plaintiff and members of the Class have been injured in that they have purchased Barkman's Raw Honey that is not raw 100% honey and has lost all or many of the physical properties of 100% raw honey as a result of being heated as alleged. Had Plaintiff and Class Members known the defective nature of the Raw Honey, they would not have purchased their honey, or would have paid a lower price for their honey.

87.     Barkman used unfair methods of competition and unfair or deceptive acts or practices in conducting its business. This conduct constitutes fraud within meaning of the KCPA. This unlawful conduct is continuing, with no indication that the wrongful conduct of Barkman will cease.

88.     As a direct and proximate result of Barkman's unfair and deceptive acts and practices, Plaintiff and the other members of the Class will suffer damages, which include, without limitation, costs to replace their Raw Honey with products that are truly 100% raw honey, in an amount to be determined at trial.

89.     As a result of the acts of consumer fraud described above, Plaintiff and the Class have suffered ascertainable losses in the form of actual damages that include the purchase price of the Raw Honey for which Barkman is liable to the Plaintiff and the Class, for their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein

in this Complaint.

## COUNT IV

## FRAUDULENT MISREPRESENTATION

90.     Plaintiff on behalf of himself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

91.     Barkman falsely and fraudulently represented to Plaintiff, the Class, and/or the consuming public in general that its Raw Honey was 100% Honey and that it had not been heated to such an extent that its physical properties were altered, compromised or destroyed and that the honey was in fact 100% raw honey.

92.     Barkman falsely represented to purchasers and consumers, that its 100% Raw Honey was 100% raw honey when in fact the Honey had had syrup added to it and the Honey had been heated, thereby compromising, altering and/or losing its 100% raw honey properties.

93.     True Source allowed Barkman to falsely represent that the honey was True Source Certified even though the honey did not meet the requirements for certification.

94.     When these representations were made by Barkman, and allowed by True Source, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

95.     These representations were made by Barkman with the intent of defrauding and deceiving the Plaintiff, the Class and/or the consuming public, all of which evidence reckless and/or willful indifference to the safety and welfare of the Plaintiff and the Class members.

96.     At the time the aforesaid, representations were made by Barkman, Plaintiff and the Class were unaware of the falsity of said representations and reasonably believed them to be true.

97.     In reliance upon said representations, Plaintiff and the Class purchased Barkman's

Raw Honey, thereby sustaining damages and injuries and/or being at an increased risk of sustaining damages and injuries in the future.

98.     Barkman knew and was aware, or should have reasonably been aware, that its 100% Raw Honey was defective and not fit for its customary and normal use.

99.     True Source knew and was aware, or reasonably should have been aware, that its True Source certification was being used by Barkman to misrepresent the lack of adulteration of Barkman raw honey.

100.    Barkman brought its Raw Honey to the consumer market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class.

## COUNT V

## FRAUDULENT CONCEALMENT AGAINST BARKMAN

101.    Plaintiff, on behalf of himself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

102.    Barkman knew or should have known that its Raw Honey was defective and not fit for its ordinary and intended use, and did not performed in accordance with either the advertisements and marketing materials of Barkman or to the reasonable expectations of ordinary consumers including Plaintiffs.

103.    Barkman fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its "100% Raw Honey" was defective.

104.    Barkman had exclusive knowledge of the defective nature of its 100% Raw Honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

105.    Barkman had the capacity to, and did, deceive Plaintiff and the Class into believing

that they were purchasing 100% Raw Honey that was free from defects, including heating.

106.    Barkman undertook active and ongoing steps to conceal the defects. Plaintiff is aware of nothing in Barkman's advertising, publicity or marketing materials that disclosed the truth about its Raw Honey, despite Barkman's awareness of the problem.

107.    The facts concealed and/or not disclosed by Barkman to Plaintiff and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Raw Honey.

108.    Barkman intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

109.    Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the Raw Honey.

110.    Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of Barkman's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Raw Honey on the same terms if the facts concerning the defective 100% Raw Honey had been known; (b) they paid a price premium because they believed the Raw Honey would be 100% raw honey, raw and otherwise free from defects; and (c) the 100% Raw Honey did not perform as promised.

111.    By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

## COUNT VI

## FRAUDULENT CONCEALMENT AGAINST TRUE SOURCE

112.    Plaintiff, on behalf of himself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

114.     True Source knew or should have known that Barkman's Raw Honey was defective and not fit for its ordinary and intended use, and did not perform in accordance with either the advertisements or marketing materials of Barkman or to the reasonable expectations of ordinary consumers including Plaintiffs.

115.     True Source fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its True Source certification of Barkman's honey as "100% Raw Honey" was defective.

116.     True Source had exclusive knowledge of the defective nature of Barkman's certification of its 100% Raw Honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

117.     True Source had the capacity to, and did, deceive Plaintiff and the Class into believing that they were purchasing Barkman's 100% Raw Honey that was free from defects, including heating.

118.     True Source undertook active and ongoing steps to conceal the defects. Plaintiff is aware of nothing in True Source's advertising, publicity or marketing materials that disclosed the truth about Barkman's Raw Honey, despite True Source's awareness of the problem.

119.     The facts concealed and/or not disclosed by True Source to Plaintiff and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Raw Honey.

120.     True Source intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

121.     Plaintiff and the Class justifiably acted and relied upon the concealed and/or

misrepresented the facts to their detriment, as evidenced by their purchase of the True Source Certified Raw Honey.

122.    Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of True Source's fraudulent concealment and nondisclosure of Barkman's honey because: (a) they would not have purchased the Raw Honey on the same terms if the facts concerning the defective 100% Raw Honey had been known; (b) they paid a price premium because they believed the Raw Honey would be 100% raw honey, raw and otherwise free from defects; and (c) the 100% Raw Honey did not perform as promised.

123.    By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

**COUNT VII**

**DECLARATORY RELIEF 28 U.S.C. § 2201**

124.    Plaintiff, on behalf of himself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

125.    A justiciable controversy of fact exists such that the court may provide declaration relief.

126.    Defendant has acted or refused to act on grounds that apply generally to the Class, so that final declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

127.    Plaintiff seeks a declaratory ruling that:

   a.    the 100% Raw Honey has a defect caused by Barkman's processing, heating and bottling methods, which causes the honey to lose the physical properties people seek in raw honey. The Court finds that these defects are material and require public disclosure of all of the 100% Raw Honey sold by Barkman over the last 3 years;

   b.    The True Source Certified certification on Barkman product labels are

22

defective for the reason that True Source either negligently or fraudulently fails to monitor its members to ensure compliance the its stated testing standards;

c.     Barkman will establish a testing program and protocol, under Court supervision, to be communicated to class members, which will require Barkman to inspect all 100% Raw Honey products in sufficient numbers to ensure that the Raw Honey is in fact 100% raw honey for a period of 5 years; and

d.     True Source will establish a testing and monitoring protocol under Court supervision to be communicated to its members which will require that True Source do sufficient testing and auditing to ensure compliance with its own membership requirements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for a judgment against Defendants as follows:

a.     For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as a representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

b.     For compensatory damages sustained by Plaintiff and the Class;

c.     For equitable and/or declaratory relief;

d.     For payment of costs of suit herein incurred;

e.     For both pre-judgment and post-judgment interest on any amounts awarded;

f.     For punitive damages;

g.     For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h.     For such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

 Plaintiff on behalf of himself and on behalf of the Class, hereby demands a trial by jury as to all issues so triable.

Dated: August 27, 2019

       Respectfully submitted,


       /s/ J. Phillip Gragson
       J. Phillip Gragson, #16103
       John H. Hutton, #16573
       Kathleen S. Harvey, #27481
       HENSON, HUTTON, MUDRICK,
        GRAGSON & VOGELSBERG, L.L.P.
       3649 SW Burlingame Rd., Ste. 200
       Topeka, KS   66611-2155
       (785) 232-2200; (785) 232-3344 (facsimile)
       jpgragson@hhmglaw.com
       jhutton@hhmglaw.com
       kharvey@hensonlawoffice.com

       Kent A. Heitzinger, IL Bar No. 3123385
       KENT A. HEITZINGER &
       ASSOCIATES
       1056 Gage St., # 200
       Winnetka, IL 60093
       Phone: (847) 446-2430
       E-mail: heitzinger.law@gmail.com
       ***(Pro Hac Vice To Be Filed)***

       Terrence Buehler, IL Bar No. 6181738
       THE LAW OFFICE OF TERRENCE
       BUEHLER
       1 South Wacker Drive, Suite 3140
       Chicago, IL 60606
       Phone: (312) 371-4385
       E-mail: tbuehler@tbuehlerlaw.com
       ***(Pro Hac Vice To Be Filed)***

       *Attorneys for Plaintiff*