IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVE WINGATE,

    **Plaintiff,**

v.

BARKMAN HONEY, LLC and
TRUE SOURCE HONEY, LLC,

    **Defendants.**

Case No. 5:19-cv-04074-HLT

## MEMORANDUM AND ORDER

Plaintiff Dave Wingate filed this consumer-fraud case on behalf of a putative plaintiff class against Defendants Barkman Honey, LLC ("Barkman") and True Source Honey, LLC ("True Source"). Plaintiff brings claims for negligence, fraudulent misrepresentation, fraudulent concealment, violation of the state consumer protection act, and declaratory judgment. Each claim is grounded in Plaintiff's contention that Defendants misrepresented the nature and quality of the honey in Barkman's "Naked Wild Great Lakes Raw Honey" product. True Source moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). Doc. 13. Barkman likewise moves to dismiss pursuant to Rule 12(b)(6), arguing Plaintiff fails to state a claim for relief. Doc. 24.

For the following reasons, the Court finds that Plaintiff's allegations fail to establish personal jurisdiction over True Source in this forum, and, accordingly, the Court grants True Source's motion and dismisses Plaintiff's claims against that entity without prejudice. The Court likewise grants Barkman's motion as it pertains to Plaintiff's claims against it for negligence, violation of the state consumer protection act, and fraudulent concealment. But the Court denies

Barkman's motion as it pertains to Plaintiff's claims for fraudulent misrepresentation and declaratory judgment.

I.     **BACKGROUND**[1]

This case stems from alleged misrepresentations made by Barkman and True Source concerning Barkman's Naked Wild Great Lakes Raw Honey ("Honey") product. Barkman is a Kansas-based company that processes, packages, and sells the Honey at issue in this case, among other honey products. Doc. 1 ¶¶ 8, 15, 43. Plaintiff—who lives in Illinois—purchased the Honey at his local grocery store in fall 2018. *Id.* at ¶¶ 7, 33. Plaintiff alleges he relied on the Honey's label, and Barkman's website, in making that purchase. *Id.* at ¶¶ 35, 46. The label describes the Honey as "100% Pure Raw Honey" and also bears a mark declaring that the Honey has been "certified" by True Source, a honey-industry trade organization based in Washington, D.C. and Canada that Plaintiff alleges exists to give consumers assurances that honey has been sourced from an identified country, has not been adulterated, is pure, and is accurately labeled. *Id.* at ¶¶ 1, 2, 10; Doc. 14-1 ¶ 2. Barkman's website likewise describes the Honey as "Raw and Unfiltered." Doc. 1 ¶ 1. But Plaintiff alleges these descriptions misrepresent the quality and nature of the Honey. Specifically, Plaintiff claims that Barkman heats the Honey—allegedly to make processing and bottling easier—and, in doing so, the Honey's physical properties are altered, compromised, or destroyed, rendering the Honey not, in fact, "raw." *Id.* at ¶¶ 34, 91. As a result, Plaintiff contends consumers are deprived of the beneficial physical properties they seek and expect in raw honey. *Id.* at ¶ 4.

---

[1]     For purposes of the pending motions to dismiss, the following background accepts as true Plaintiff's well-pleaded factual allegations.

Based on these alleged misrepresentations, Plaintiff brings this action on behalf of himself and other consumers who purchased the Honey. Doc. 1. Plaintiff asserts seven causes of action against Barkman and True Source: (1) Count I for negligence (against Barkman); (2) Count II for negligence (against True Source); (3) Count III for violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50-623, et seq. (against both); (4) Count IV for fraudulent misrepresentation (against both); (5) Count V for fraudulent concealment (against Barkman); (6) Count VI for fraudulent concealment (against True Source); and (7) Count VII for declaratory judgment pursuant to 28 U.S.C. § 2201 (against both). *Id.* Plaintiff seeks actual damages—including the "premium" price paid for the Honey and costs incurred in replacing the Honey with "truly 100% raw honey"—as well as declaratory relief, costs and attorneys' fees, pre- and post-judgment interest, and punitive damages. *Id.*

## II. ANALYSIS

Both True Source and Barkman move to dismiss Plaintiff's case in its entirety. Docs. 13, 24. The Court first addresses True Source's motion and then takes up Barkman's arguments for dismissal.

### A. True Source's Motion to Dismiss (Doc. 13)

True Source is named as a defendant to five of Plaintiff's seven claims: Count II for negligence, Count III for violation of the KCPA, Count IV for fraudulent misrepresentation, Count VI for fraudulent concealment, and Count VII for declaratory judgment. Doc. 1. The allegations against True Source are grounded in Plaintiff's contention that True Source allowed Barkman to falsely represent that the Honey was "True Source Certified," even though the Honey did not meet the requirements for such certification. *Id.* True Source moves to dismiss under Rule 12(b)(2), asserting the Court lacks personal jurisdiction over it, and for failure to state a claim under Rule

12(b)(6). Docs. 13-14. For the following reasons, the Court finds that Plaintiff has failed to meet his burden to show personal jurisdiction over True Source, warranting dismissal without prejudice of Plaintiff's claims against that entity.[2]

**1.    Standard**

The plaintiff bears the burden to establish personal jurisdiction over each defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). When courts decide a Rule 12(b)(2) motion on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* Courts assume the allegations in the complaint to be true to the extent not contradicted by the defendant's affidavits, and all factual disputes are resolved in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

To establish personal jurisdiction over a defendant, a plaintiff must satisfy both the state long-arm statute and constitutional due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). But, because the Kansas long-arm statute reaches as far as federal due process will allow, the issue is narrowed to whether assertion of personal jurisdiction over the defendant would violate due process. *OMI Holdings*, 149 F.3d at 1090. Due process allows a federal court sitting in diversity to exercise personal jurisdiction over a non-resident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980). This "minimum contacts" standard may be met in two ways—through either "specific" personal jurisdiction or "general" personal jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. In this case, Plaintiff tacitly concedes True

---

[2]    Because the Court finds that dismissal under Rule 12(b)(2) is warranted, the Court does not reach True Source's Rule 12(b)(6) arguments.

Source's argument that the Court cannot maintain general jurisdiction over True Source. *See* Doc. 16 at 5-11 (failing to address this argument). Therefore, the Court confines its analysis to whether an exercise of specific jurisdiction over True Source would offend due process.

The specific jurisdiction inquiry is two-fold. First, courts must determine whether the defendant has such minimum contacts with the forum "that he should reasonably anticipate being haled into court there." *OMI Holdings*, 149 F.3d at 1091 (citing *World-Wide Volkswagen*, 444 U.S. at 297). And, within this inquiry, courts must determine whether the defendant purposefully directed its activities at residents of the forum state and whether the plaintiff's claim arises out of actions by the defendant itself that create a substantial connection with the forum. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 109 (1987)). Second if the defendant's actions create the requisite minimum contacts, courts must then consider whether exercising personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Id.* (citing *Asahi*, 480 U.S. at 113).

### 2. Analysis

For the following reasons, the Court finds that Plaintiff has not met his burden to establish personal jurisdiction over True Source in this forum. First, as True Source points out in its briefing (Doc. 14 at 6), Plaintiff does not assert any allegations in the complaint regarding the basis for personal jurisdiction over True Source. Indeed, although the complaint alleges that "Barkman does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District" (Doc. 1 ¶ 12), it makes no mention of the allegations supporting jurisdiction over True Source.

Second, not only does Plaintiff fail to make even a bald allegation regarding the basis for personal jurisdiction over True Source, he also fails to assert any facts establishing True Source possesses the minimum contacts constitutionally required to subject it to jurisdiction in this forum. True Source is a District of Columbia limited liability company that conducts its operations in Washington, D.C. and Winnipeg, Canada. Doc. 14-1 ¶ 2. As discussed above, to establish specific personal jurisdiction over True Source, Plaintiff must show that his claims in this case arise out of the purposefully-directed activities of True Source in this forum. *See OMI Holdings*, 149 F.3d at 1091. But there are no allegations or evidence showing that True Source has purposefully directed <u>any</u> activities at the state of Kansas. Nor does Plaintiff allege that the injuries giving rise to his claims in this action arose from any purposefully-directed activities by True Source in Kansas. In fact, Plaintiff's injuries were not even sustained in Kansas. Here, the complaint alleges that Plaintiff sustained his injuries—which he identifies as financial—in his home state of Illinois, where he purchased the Honey. Doc. 1 ¶ 33.

In his opposition, Plaintiff argues that the Court has specific jurisdiction over True Source because, in order to determine that Barkman is entitled to the "True Source Certified" designation, True Source must "provide oversight to Barkman's honey packaging process in Kansas." Doc. 16 at 7. Plaintiff also cites True Source's "promise to review each certified company's processing equipment and facilities for compliance with their certification rules." *Id.* But there are no allegations in the complaint or evidence that True Source ever provided such "oversight" of Barkman's packaging process or reviewed Barkman's equipment and facilities. To the contrary, documents submitted by True Source with its motion indicate that no True Source employee has ever traveled to Kansas on behalf of True Source. Doc. 14-1 ¶ 3.

Plaintiff also argues that, because he "obtained True Source certified honey from a Kansas source—Barkman," and because Barkman used True Source's certification mark to advertise and solicit sales of that product, True Source has "clearly directed" its actions towards Kansas, "as that is where Barkman—a True Source member—is located and that is where Barkman packages and sells its honey." Doc. 16 at 7. But it is well established that the relationship between a defendant and the forum state must "arise out of contacts that the defendant <u>himself</u> creates with the forum state" and, further, that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *See Walden v. Fiore*, 571 U.S. 277, 284-86 (2014) (emphasis in original). Plaintiff therefore cannot rely on allegations regarding <u>Barkman</u> to support jurisdiction over <u>True Source</u>. And the two cases that Plaintiff relies on to support his specific jurisdiction argument—*Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F. Supp. 434 (D. Kan. 1980) and *Barteldes v. Hyman Properties, Inc.*, 1998 WL 928395 (D. Kan. 1998)—are factually inapposite, and, specifically, involve much more robust jurisdictional contacts than are present in this case.

In sum, not only is the complaint devoid of any allegations regarding the basis for personal jurisdiction over True Source, Plaintiff still fails to come forward with any facts or case law supporting personal jurisdiction even when faced with a direct challenge by True Source to the Court's jurisdiction. For all of these reasons, the Court finds that Plaintiff has failed to carry his burden to show the requisite minimum contacts so as to establish personal jurisdiction over True

Source in this forum.[3] Accordingly, the Court dismisses Plaintiff's claims against True Source without prejudice under Rule 12(b)(2) for lack of personal jurisdiction.[4]

**B.      Barkman's Motion to Dismiss (Doc. 24)**

The Court now turns to Barkman's motion to dismiss. Plaintiff asserts claims against Barkman for negligence (Count I), violation of the KCPA (Count III), fraudulent misrepresentation (Count IV), fraudulent concealment (Count V), and declaratory judgment (Count VII). Doc. 1. Barkman moves to dismiss each count under Rule 12(b)(6), arguing Plaintiff fails to state a claim for relief. Docs. 24-25.

**1.      Standard**

Courts will dismiss a cause of action under Rule 12(b)(6) in two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable

---

[3] Because the Court finds Plaintiff has not established the requisite minimum contacts, the Court need not analyze whether an exercise of personal jurisdiction over True Source would offend traditional notions of fair play and substantial justice. But, for the reasons set forth in True Source's briefing (*see* Doc. 14 at 9-11), the Court believes that an exercise of jurisdiction over True Source in this forum would be unreasonable.

[4] Although not raised by either party, the Tenth Circuit has indicated that—in cases where jurisdiction is lacking—28 U.S.C. § 1631 requires courts to consider whether to transfer rather than dismiss without prejudice, and, further, that § 1631 permits courts to sever and transfer some of the claims in an action. *See Trujillo*, 465 F.3d at 1222-23; *FDIC v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996) (concluding that § 1631 allows for the partial transfer of an action when the district court indicates an intent to create two separate actions, such as through a Rule 21 severance). Courts ultimately have discretion in deciding whether transfer is appropriate and can consider the issue sua sponte. *Trujillo*, 465 F.3d at 1222-23. In determining whether transfer is "in the interest of justice" (*see* 28 U.S.C. § 1631), courts should consider whether the new action would be time barred, whether the claims are likely to have merit, and whether the original action was filed in good faith. *Id.* at 1223 n.16. The factors weigh against transfer here. It seems the new action would not be time barred and, after a cursory review of the complaint and the Rule 12(b)(6) briefing, the Court has doubts as to the merits of Plaintiff's claims against True Source. Other factors also weigh against transfer, including, again, the fact that neither party requested transfer as an alternative to dismissal or otherwise raised this issue in the briefing. Transfer would also require the parties to litigate this case in two separate forums. For these reasons, the Court declines to sever and transfer Plaintiff's claims against True Source pursuant to § 1631 and instead dismisses them without prejudice to their refiling in an appropriate forum.

inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

### 2. Analysis

For the following reasons, the Court finds this standard warrants dismissal of three of the five claims asserted against Barkman: Plaintiff's claims for negligence, violation of the KCPA, and fraudulent concealment. But the Court denies Barkman's bid for dismissal on Plaintiff's fraudulent misrepresentation and declaratory judgment claims. The Court addresses the arguments with respect to each claim.

#### a. Negligence (Count I)

The Court first addresses Count I for negligence against Barkman. In its motion, Barkman argues the Court should dismiss this claim because it is barred by the economic-loss doctrine. Doc. 25 at 9-10; *see also Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982) (holding that, in Illinois, a product-liability plaintiff cannot recover economic losses under a negligence theory);[5] Doc. 1 (seeking only damages related to the perceived inadequate value of the Honey and cost of replacement).

In response, not only does Plaintiff consent to the dismissal of his negligence claim—by stating that he "voluntarily dismisses" the claim—he does not respond to any of Barkman's substantive arguments in favor of dismissal. Doc. 31 at 5. Plaintiff therefore implicitly concedes the merits of Barkman's arguments on this claim, and, accordingly, the Court dismisses Plaintiff's

---

[5] Neither party disputes that Illinois law applies to Plaintiff's negligence claim. Nor do the parties dispute the applicability of Illinois law to Plaintiff's fraudulent misrepresentation (*see infra* Part II.B.2.c) and fraudulent concealment (*see infra* Part II.B.2.d) claims.

negligence claim against Barkman with prejudice. *See Phillips USA Inc. v. Allflex USA, Inc.*, 1993 WL 545216, at *2 (D. Kan. 1993) (holding that a plaintiff cannot voluntarily dismiss a claim to avoid an adverse ruling on a dispositive motion); *Wimber By & Through Wimber v. Dep't of Soc. & Rehab. Servs.*, 156 F.R.D. 259, 261-62 (D. Kan. 1994) (same).

### b. Violation of the KCPA (Count III)

The Court next addresses Plaintiff's claim against Barkman under the Kansas state consumer protection statute, the KCPA. In its motion, Barkman argues Plaintiff's KCPA claim fails because Plaintiff alleges he purchased the Honey in his home state of Illinois (*see* Doc. 1 ¶¶ 18, 33) and the KCPA requires a transaction made <u>in the state of Kansas</u> to impute liability. Doc. 25 at 8-9.

In response, Plaintiff does not deny pleading a purchase in Illinois or contend he made a purchase in Kansas. Nor does Plaintiff contest the law underlying Barkman's argument—i.e., that the KCPA does not apply to out-of-state transactions. And, indeed, Plaintiff could not credibly make such an argument. *See* K.S.A. §§ 50-624(c), 50-626(a) (the KCPA prohibits "any deceptive act or practice in connection with a consumer transaction" and defining "consumer transaction," in pertinent part, as "a sale . . . of property or services within this state . . . to a consumer"); *Montgomery v. Sprint Spectrum, L.P.*, 2007 WL 3274833, at *6 (D. Kan. 2007) (in dismissing KCPA claim brought by out-of-state resident, holding that the KCPA applies to consumer transactions occurring "within this state" and "[t]he KCPA is not intended to serve as a nationwide basis for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here"). Rather, Plaintiff asserts that "many" consumers purchased the Honey in Kansas, and <u>if</u> a class is ultimately certified, and <u>if</u> those consumers happen to join that class, those consumers <u>may</u> assert KCPA claims. Doc. 31 at 5. Using

this logic, Plaintiff reasons that Barkman's argument is "premature" until such time as the Court considers a motion for certification. *Id.*

But, as Barkman argues in its reply, this argument fails because it is well settled that Plaintiff cannot rely on speculative claims of unnamed class members to support his own KCPA claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (same). Put differently, Plaintiff cannot assert a claim on behalf of unidentified members of his proposed class, and, in the absence of any Kansas transaction of his own, his KCPA claim fails. The Court accordingly dismisses Count III against Barkman.

        c.        **Fraudulent Misrepresentation (Count IV)**

The Court next turns to Plaintiff's fraudulent misrepresentation claim against Barkman. Plaintiff's claim is based on his allegations that the Honey is not actually "raw," that Barkman knows the Honey is not "raw," and that Barkman nonetheless markets the Honey as "100% Raw Honey" with the intent to defraud and deceive consumers. Doc. 1 ¶¶ 91-100.

To state a claim for fraudulent misrepresentation, a plaintiff must plead: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). In its motion, Barkman argues that Plaintiff's allegations do not satisfy each element of his prima facie case. Doc. 25 at 10. But, though making this general argument, the lion's share of Barkman's motion on this count is devoted to the first

element. *Id.* at 11-14. That is, Barkman argues that Plaintiff fails to adequately plead that Barkman's use of the term "raw" to describe its Honey is false. *Id.*

Barkman specifically takes issue with Plaintiff's definition of the term "raw." Barkman maintains that Plaintiff defines "raw" honey to mean honey that was not heated above 105 degrees Fahrenheit. *Id.* at 12. Barkman argues this definition is not an allegation the Court is required to accept as true and that Plaintiff pleads a plausible fraud theory only if the well-pleaded facts show that a reasonable consumer might also hold—and be deceived by—this same definition of "raw." *Id.* at 11-12; Doc. 36 at 6-7. Barkman argues that Plaintiff has not met this burden because no reasonable consumer would define "raw" in this manner. Doc. 25 at 12. And Barkman also contends that, even accepting this definition, Plaintiff has not pleaded facts suggesting Barkman heated the Honey above 105 degrees so as to render its use of the term "raw" false. *Id.* at 13.

But Barkman's interpretation of the definition advanced by Plaintiff represents a narrow view of the allegations in the complaint. In the complaint, Plaintiff alleges that "raw" honey is honey that is not heated to such an extent as to "alter, compromise, or destroy" its physical properties—specifically, the enzymes "prized by consumers" in raw honey. Doc. 1 ¶¶ 4, 91. Plaintiff alleges that, when honey reaches a temperature greater than 105 degrees, those enzymes begin to break down. *Id.* at ¶ 4. Plaintiff's definition of raw therefore focuses on the effect of heating on the physical properties consumers expect and seek in raw honey. Under Plaintiff's definition, honey is "raw" if those properties remain intact; honey is not "raw" if those properties are altered, compromised, or destroyed.

The well-pleaded facts plausibly establish that a reasonable consumer could share this definition of the term "raw." Barkman's website—as alleged in the complaint—touts Barkman's "raw honey" as "warmed just enough to liquefy the honey crystals while retaining natural

enzymes." *Id.* at ¶ 15. Plaintiff's allegations regarding this statement therefore support his definition of "raw" because this statement arguably recognizes that consumers are concerned that too much heat during processing could alter, compromise, or destroy the natural enzymes. The Court finds that Plaintiff has plausibly alleged that a reasonable consumer could share his definition and, thus, adequately pleads a false statement. And, with respect to the slew of cases cited by Barkman in support of its argument that courts have rejected similar claims relying on subjective definitions of commonly understood terms (*see* Doc. 25 at 11-12), having reviewed those cases, the Court finds them inapposite. Each of the cases involved a situation where information on the product's packaging belied Plaintiff's proposed interpretation or definition. That is not the case here.

Finally, Barkman also challenges whether Plaintiff can meet the other elements of his prima facie case. Doc. 25 at 15-16. But, for the most part, Barkman's arguments as to those other elements are derivative of its larger argument, and the Court therefore rejects those arguments for the same reasons. Plaintiff has adequately pleaded knowledge, intent, reliance, and damages. *See* Doc. 1 at ¶¶ 94-100. The Court therefore denies Barkman's motion to dismiss as it pertains to Count IV for fraudulent misrepresentation.[6]

### d. Fraudulent Concealment (Count V)

Next, the Court considers Count V for fraudulent concealment. In his complaint, Plaintiff alleges Barkman committed fraud by failing to disclose to consumers that the Honey is "defective"—i.e., not actually raw. *Id.* at ¶¶ 103-105. To state a claim for fraudulent concealment

---

[6] Although the Court finds that this claim survives a motion to dismiss, the Court expresses no opinion as to whether this claim is amenable to class certification given the potentially vexing issue of reliance inherent in a fraud claim. *See, e.g.*, *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983); *Stewart v. GNP Commodities, Inc.*, 1992 WL 121545, at *5 (N.D. Ill. 1992). The Court will address that issue at the earliest practicable time in accordance with Rule 23.

under Illinois law, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 675 N.E.2d at 593. Such a duty may arise where: (1) the plaintiff and the defendant are in "a fiduciary or confidential relationship"; or (2) where the plaintiff places "trust and confidence" in the defendant, placing the defendant in a position of influence and superiority over the plaintiff, which may arise by reason of friendship, agency, or experience. *Id.*; *see also Lidecker v. Kendall Coll.*, 550 N.E.2d 1121, 1126 (Ill. 1990) ("In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.").

Barkman argues the Court must dismiss this claim because Plaintiff failed to plead a "special" relationship between Plaintiff and Barkman. Doc. 25 at 16-17. The Court agrees. With respect to the relationship between Plaintiff and Barkman, the complaint merely alleges that Plaintiff purchased the Honey from his local grocery store and that Barkman processed, packaged, and sold the Honey. Doc. 1 ¶¶ 1, 33, 43. Nowhere in the complaint does Plaintiff allege that he was in a confidential, fiduciary, or otherwise "special" relationship with Barkman or that Barkman was in a position of superiority over him. In the absence of such allegations, the complaint does not plausibly allege a duty to disclose material facts that could give rise to a viable claim for fraudulent concealment against Barkman.

In his opposition, Plaintiff argues that, even where there is no "special" relationship between a plaintiff and defendant, a duty to disclose still arises where the fraud involves a "half-truth," which Plaintiff claims is this case here. Doc. 31 at 10-11. Plaintiff cites several cases to support this argument, but each is factually, legally, and procedurally inapposite to the circumstances presented here. And the Court instead finds the Illinois Supreme Court decision *Connick v. Suzuki Motor Co.*, cited in Barkman's briefing, to be instructive. In *Connick*, the

plaintiffs purchased vehicles from Suzuki dealers and later brought suit against Suzuki itself, alleging (among other things) that Suzuki had fraudulently concealed the vehicles' safety risks. 675 N.E.2d at 593. Because the relationship between the plaintiffs and Suzuki involved nothing more than that the plaintiffs had purchased the vehicles from an authorized Suzuki dealer and that Suzuki had manufactured and distributed those vehicles, the court held that the plaintiffs had failed to "sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them." *Id.* (affirming the trial court's dismissal of the fraudulent concealment claim).

In sum, *Connick*, like here, involves a simple buyer-seller relationship, and the court held that such a relationship did not give rise to the sort of "special" relationship required to sustain a fraudulent concealment claim. This case indicates dismissal is proper. Indeed, to hold otherwise would essentially transform every buyer-seller relationship into a "special" relationship supporting a fraudulent concealment claim. That is an untenable result. For all of these reasons, the Court dismisses Count V for fraudulent concealment against Barkman.

e. **Declaratory Judgment (Count VII)**

Finally, the Court turns to Plaintiff's claim for declaratory relief. Barkman's argument for dismissal of this claim is entirely premised on its contention that, because each of Plaintiff's other claims fails, Plaintiff cannot show the requisite "case or controversy" to support his declaratory judgment claim. Doc. 25 at 17; *see also* 28 U.S.C. § 2201(a) (providing that "[i]n a case of actual controversy" the court may "declare the rights and other legal relations of any interested party seeking such declaration"); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (holding that a declaratory judgment plaintiff must assert "a case of actual controversy" within the presiding court's jurisdiction). But this argument is rendered moot by the Court's earlier

conclusion that Plaintiff has stated a claim for fraudulent misrepresentation. And Barkman does not raise any other arguments for dismissal of this claim. Accordingly, the Court denies Barkman's motion as it pertains to Plaintiff's declaratory judgment claim.

### III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant True Source Honey, LLC's motion to dismiss (Doc. 13) is GRANTED. Plaintiff's claims against True Source are accordingly DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

THE COURT FURTHER ORDERS that Defendant Barkman Honey, LLC's motion to dismiss (Doc. 24) is GRANTED IN PART and DENIED IN PART. As more fully set forth in Part II.B, the Court dismisses Plaintiff's claims against Barkman for negligence, violation of the KCPA, and fraudulent concealment. But Plaintiff's fraudulent misrepresentation claim and request for declaratory judgment remain for disposition.

IT IS SO ORDERED.

Dated: January 22, 2020 /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE